**Ronald Lee Roy BRANCHCOMB, Appellant,**

v.

**Lou BREWER, James Menke, and Charles Wilkens, Appellees.**

**No. 81–1786.**

United States Court of Appeals, Eighth Circuit.

Submitted March 8, 1982.

Decided July 14, 1982.

---

Gordon E. Allen, Allen, Babich & Bennett, Des Moines, Iowa, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, John G. Black, Sp. Asst. Atty. Gen., Jonathan Golden, Asst. Atty. Gen., Des Moines, Iowa, for defendants-appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and WOODS,* District Judge.

ARNOLD, Circuit Judge.

In this action under 42 U.S.C. § 1983, plaintiff seeks damages from officials of the Iowa State Penitentiary for their failure to protect him from homosexual rapes perpetrated by other inmates. After oral argument, we remanded the cause to the District Court[1] with directions to make more specific findings as to defendants' state of mind. We explained that "plaintiff must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir. 1982). The District Court promptly made additional findings, and it is our duty to decide whether they are clearly erroneous. After reading the entire transcript, we hold that the trial court's finding that the defendants were not "deliberately indifferent to [plaintiff's] . . . constitutional rights," *Branchcomb v. Brewer*, No. C 79–66 (N.D.Iowa March 2, 1982), is not clearly erroneous. The judgment in favor of the defendants Brewer, Menke, and Wilkens is therefore affirmed.

I.

Branchcomb was 21 years old in 1978. He had been an Iowa prison inmate since

---

* The Hon. Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Hon. Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

1975, having been convicted of robbery and breaking and entering. (He has since been unconditionally released.) He was initially confined at the Iowa State Men's Reformatory at Anamosa, Iowa. On April 25, 1978, at his own request, plaintiff was transferred to the Iowa State Penitentiary (ISP) at Ford Madison, Iowa, an institution generally inhabited by older and more hardened criminals. Shortly after arriving at ISP, plaintiff told Richard Barry, his counsellor, that he was afraid of some of the other inmates. Some older "residents," whose names he did not know, had made comments to him "about sex and stuff like that," and they seemed "serious." Plaintiff asked to be placed in protective custody (PC), and his request was granted at once. Inmates in PC have more secure living quarters, and guards accompany them whenever they go to work, to school, to the gymnasium, the library, or the dining hall. Some inmates in PC have jobs, but Branchcomb did not.

At some point in May, Branchcomb asked to be sent back to Anamosa, and on May 22, 1978, Barry actually recommended that this re-transfer take place. Requests for transfer must first be approved by the Warden (defendant Lou Brewer was Warden of ISP at the time), and then by the Director of the Iowa Division of Adult Corrections, whose office is in Des Moines, and by the Warden of the transferee institution. Among the factors relevant to such requests are the reasons assigned in support of them and the availability of beds in the proposed transferee institution. Normally requests for transfer take three weeks for action, and a request based on a specific incident of violence against the requesting inmate, or on an expressed fear of violence from a named person, would more likely be granted than a request stemming from a generalized fear of the institution. The record does not reveal what happened to the recommendation made by Barry that Branchcomb be transferred back to Anamo-

sa, except that it was never acted on, one way or the other.

Towards the end of June, 1978, while Barry was on a two-week vacation, Branchcomb asked to be let out of PC and restored to the general population. His request was reviewed by certain security officials, names unknown, and plaintiff told them "the problems was resolved that I was having when I did go to PC the first time . . ." (Tr. 42). Plaintiff testified that Barry encouraged him to leave PC, on the ground that he needed to show he could "make it," Tr. 16, in the general population before being granted parole or work release, but Barry denied making any such statement, Tr. 142, and the trier of fact was not required to believe plaintiff.[2] In any case, Branchcomb's request for release from PC was granted on June 23, 1978, and he seems thereafter not to have pursued the possibility of returning to Anamosa. He completed orientation, was released into the general population, and began work in the kitchen, a job he had asked for.

On or about July 17, 1978, three days after the kitchen job began, three inmates forcibly tattooed Branchcomb with the initials "ISPF" on his buttocks. They also held him down and pulled hair out of his chest. An inmate named Kim LeMatty acted as lookout during this attack. On July 23, 1978, LeMatty and Lloyd Offutt, both of whom worked in the kitchen area with Branchcomb, took plaintiff into a little room behind the dish-washing machine and raped him. On July 25, 1978, they did it again. That same day or the next, plaintiff overcame his terror of retaliation and reported the incidents to Barry. The counsellor at once got in touch with defendant Charles Wilkens, assistant director of security in the main unit of ISP. Wilkens took a statement from plaintiff that same day and immediately returned him to PC. Two days later, Branchcomb was sent back to Anamosa. The State of Iowa prosecuted Offutt

---

2. We note also that in June, apparently while plaintiff was still in PC, a classification group met and indicated that he would be eligible for work-release placement or consideration in Au-

gust. Stipulation contained in Final Pre-Trial Conference Order ¶ I.14 (filed March 24, 1981), Designated Record 45–46.

and LeMatty, and they received additional prison terms for the attack on plaintiff.

## II.

The facts of this case are brutal and revolting. Offutt and LeMatty deserve to be punished, and they have been. We are bound to say, in addition, that security procedures at ISP could stand a good deal of improvement, as defendants themselves, no doubt, would concede. Funding for penitentiary construction and correctional employees is no easier to come by in Iowa than it is in most other states. The general public are enthusiastic about punishing criminals, but markedly less so about taxing themselves to make the correctional system workable and humane. This record contains several instances of funding requests denied, in whole or in part, by the Legislature of Iowa. Our task as judges is not to express a moral or policy judgment about the state of penology in Iowa, nor even, in the context of this case, to consider the constitutionality of the conditions of confinement at ISP. This is neither a class action nor a suit in equity. This is an action for money damages by an individual against three named defendants, and the plaintiff, if he is to succeed, must show that Lou Brewer, James Menke, and Charles Wilkens acted not simply carelessly, but with reckless disregard of his right to personal safety.

■ On appeal we of course indulge every reasonable inference that will support the findings of the trier of fact. As to Warden Brewer, there is almost no proof. So far as we know, he never knew Branchcomb, or even knew of him. Brewer never acted on Barry's initial recommendation for re-transfer to Anamosa, but the record does not tell us why, nor is it clear that the request would have been granted had the Warden considered it before the rapes. Defendant James Menke, director of security at ISP, was responsible in general for the safety of inmates and staff, but liability under Section 1983 is personal, not vicarious or derivative. *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.

Ct. 2018, 56 L.Ed.2d 611 (1978). Menke had little if any personal contact with Branchcomb. He did testify that any inmate who requests it is admitted to PC, whether or not he cooperates with the authorities in any investigation of his reasons for fearing for his safety. Menke had no personal knowledge of Branchcomb's leaving PC, and he never discussed plaintiff's case with Barry. He had no role in approving requests for transfer.

■ The defendant Wilkens, assistant director of security, probably had more personal contact with and knowledge of plaintiff than the other two named defendants, Brewer and Menke, but most of it seems to have come after the rapes, not before. He knew that Branchcomb and Offutt worked in the dining hall, and Offutt's file contained alarming information, including the fact that he had previously committed a homosexual rape on another inmate. If Wilkens had known the contents of Offutt's file, and if he had thereafter done nothing to protect Branchcomb or transfer him to another job, one might well label Wilkens's state of mind as "conscious indifference" or "reckless disregard." But these hypotheses are contrary to fact. Wilkens did not read Offutt's file, and the decision to give plaintiff the kitchen job he wanted was not made by any of the named defendants, but by an unnamed work supervisor. There were about a thousand inmates at ISP in July of 1978. Each of them had two or three files, and on most men the files were more than two inches thick. Many of the men had extensive histories of violence. About 100 were serving life sentences, many of those for murder. Obviously a system that required a full review of all relevant files before assigning a "pretty boy" to a job alongside a rapist would be advisable. But we cannot say that the District Court clearly erred in failing to ascribe that institutional default to a reckless or callous attitude towards plaintiff on the part of any of the three named defendants. As counsel for plaintiff remarked to Mr. Wilkens (and we agree): "I understand that you as an individual can't go down and

go through this mountain of papers down at the records office ..." (Tr. 213).

Counsel for appellant eloquently urges that a number of steps could have been taken to avoid or reduce the risk of injury to Branchcomb: early re-transfer to Anamosa, elimination of the "blind spot," not visible to guards, behind the dish-washing machine, a better system of file review and internal communication that might have led someone to warn Branchcomb not to work with Offutt, to name some of them. These suggestions may be apt and useful. Failure to carry them out may make out a good theory of ordinary negligence on the part of ISP as an institution, if not of the three named defendants. In fact, a finding by the trier of fact, supported by appropriate inferences and findings as to credibility, that some defendant was guilty of reckless disregard, would have been hard to assail on appeal. But our function is circumscribed, and, for reasons we have given, we are not definitely and firmly convinced that the District Court made a mistake. It is an overstatement to say, as counsel argues, that plaintiff's cries for help to the administration went unheeded. His cries did not go unheeded. He asked for transfer to ISP; he asked to be placed in PC; he asked to be released from PC; he asked for the job in the kitchen; and after the rapes he again asked for protection. In each case the prison administration granted his request. An inmate who says he is in fear is "never refused protective custody" (Tr. 84), and he may stay in PC as long as he is afraid to come out. Inmates who leave PC may be stigmatized as "snitches," and life is more complicated when one is always accompanied by a guard, but we are not persuaded that the practice of protective custody at ISP falls so far short of reasonable physical protection as to violate the Constitution of the United States.

**III.**

■ Plaintiff also objects on this appeal to the District Court's dismissal of his amended complaint as to two additional defendants, counsellor Richard Barry and Irwin Smalheiser, M.D., a consulting psychologist under contract to ISP who interviewed Branchcomb shortly after his admission. The amended complaint was filed more than two years after the injury, and the District Court held that it was barred by the two-year statute of limitations contained in Iowa Code § 614.1(2) (actions for injuries to the person or reputation).[3] At the time of the District Court's ruling, *Branchcomb v. Brewer*, No. C 79–66 (N.D. Iowa April 6, 1981), there was authority to support application of the two-year statute. *E.g., Rosales v. Lewis*, 454 F.Supp. 956 (S.D. Iowa 1978). In fact, both sides agreed below that two years was the appropriate period of limitations. After this case was briefed on appeal, however, this Court, approving a contrary line of cases, *e.g., Barrett v. Wichael*, 387 F.Supp. 1263 (S.D.Iowa 1974), held that the proper period of limitations for § 1983 actions in Iowa is the five-year period prescribed in Iowa Code § 614.-1(4), covering actions not specifically covered in other statutes of limitations. *Garmon v. Foust*, 668 F.2d 400 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982).[4]

In these circumstances, we deem it just, see 28 U.S.C. § 2106, to vacate the order of the District Court dismissing the amended complaint as against Barry and Smalheiser, and remand the cause with directions to reconsider the motion to dismiss the amended complaint in light of our holding in *Garmon* that the proper statute of limitations is five years, a period of time that has not yet run. *Cf. United States v. The Schooner Peggy*, 1 Cranch 103 (1801) (an appellate court must apply, in reviewing a judgment below, the terms of a treaty ratified after

---

**3.** The District Court also held that plaintiff could not avail himself of the "relation back" provisions of Fed.R.Civ.P. 15(c) to add new parties. In view of our disposition of the limitations question on this appeal, we need not address this further point.

**4.** We commend counsel for appellees for his candor in calling *Garmon* to our attention at the oral argument.

the judgment was entered). If, as seems clear, the motion to dismiss must now be denied, it will be up to plaintiff whether to pursue his action against Barry and Smalheiser. In view of the District Court's findings, now affirmed, as to Brewer, Menke, and Wilkens, he may think the game is no longer worth the candle, but that is not a decision we can make. It may be that different evidence would have been introduced, and different findings made, if Barry and Smalheiser had remained as parties at the time of trial.

### IV.

The dismissal of the complaint as to Brewer, Menke, and Wilkens is affirmed. The order dismissing the complaint on the ground of limitations as to Barry and Smalheiser is vacated, and that portion of the cause remanded for further proceedings consistent with this opinion.

It is so ordered.